

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

July 15, 2021

**Via ECF**
The Honorable Judge Andrew E. Krause
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: **Frias, et al. v. Restoration Specialties Inc., et al.**
    **20-CV-6560 (AEK)**

Dear Judge Krause:

Our office represents the Domingo Frias ("Frias"), Francisco Reyes ("Reyes"), and Agustin Olarte ("Olarte") (collectively, the "Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for Restoration Specialties, Inc. ("RSI") and Tim O'Donoghue ("O'Donoghue") (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached with the assistance of the Court, following Settlement Conferences before Your Honor on June 1, 2021 and June 22, 2021.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-336 as a basis for why the Court should approve the Agreement. Separately, Plaintiffs address their request for attorneys' fees and their fee arrangement.

### I.  The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiffs' range of possible recovery:**

**a. Plaintiffs' Position**

Plaintiffs are three former employees of RSI. Plaintiffs were employed as non-overtime-exempt laborers and construction workers. In general, Plaintiffs alleged that they were not properly

27438033v.1

compensated for their overtime hours when they worked in excess of 40 hours per workweek in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").[1] Plaintiffs were employed for varying time periods within the relevant statutory period, but all Plaintiffs alleged that they were subject to the same improper pay practices of the Defendants. Plaintiffs claimed that they were received flat daily rates of pay that did not properly compensate them for their overtime hours.

Plaintiff Frias alleged that he was employed by Defendants from in or around July 2014 until in or around January 2020. Frias alleged that he regularly worked approximately sixty-six (66) hours per week during his employment but was compensated a flat daily rate ranging from $100.00 to $150.00 (depending on the time period). As such, Frias claimed that he was owed unpaid overtime wages for approximately twenty-six hours of overtime worked each week within the relevant statutory period.

Plaintiff Reyes alleged that he was employed by Defendants from in or around August 2018 until in or around July 2020. Reyes alleged that he regularly worked approximately sixty-six (66) hours per week during his employment but was compensated a flat daily rate of $160.00. As such, Reyes claimed that he was owed unpaid overtime wages for approximately twenty-six hours of overtime worked each week of his employment.

Plaintiff Olarte alleged that he was employed by Defendants from in or around 2002 until in or around February. Olarte alleged that he regularly worked approximately sixty (60) hours per week during his employment but was compensated a flat daily rate ranging from $150.00 to $160.00 (depending on the time period). As such, Olarte claimed that he was owed unpaid overtime wages for approximately twenty hours of overtime worked each week within the relevant statutory period.

After careful analysis and review of Defendants' records, Plaintiffs estimated that they could still recover up to $110,000.00 in unpaid overtime wages in addition to liquidated damages and statutory penalties for wage notice and wage statement violations pursuant to NYLL § 195. As such, Plaintiffs' best-case scenario at trial would have been a judgment in the amount of approximately $250,000.00. Of course, Plaintiffs also risked the possibility of not recovering anything at trial. As such, Plaintiffs' realistic range of recovery was $0.00 to $250,000.00.

However, the $250,000.00 figure assumed that each Plaintiff would be 100% successful establishing all of his claims, including the exact number of hours worked each week, the exact dates of their employment, and the exact rates of pay received. Plaintiffs also acknowledged that based on the records provided, Plaintiffs were not likely to succeed on any wage claims after December 2018. Although Plaintiffs were confident that they could succeed on their claims at the time of trial, Plaintiffs preferred a guaranteed payment rather than risk a less favorable outcome at trial.

Plaintiffs considered the records provided by Defendants' counsel, the strength of Defendants' witness testimony and their defenses in deciding to settle this matter for the agreed-

---

[1] As the Complaint in this matter was filed on August 18, 2020, the relevant statutory period, pursuant to NYLL's six-year statute of limitations, commenced on August 18, 2014.

upon amount of $80,000.00. Based on the above, this amount falls squarely within Plaintiffs' reasonable range of recovery and accounts for the risks of continued litigation.

### b. Defendants' Position

Restoration Specialties, Inc. ("RSI"), owned by Tim O'Donoghue, is an exterior contractor located in the greater Westchester, New York area, where Plaintiffs Domingo Frias, Francisco Reyes and Agustin Olarte were previously employed. Defendants deny all of Plaintiffs' allegations in their complaint. The payroll records for Mr. Frias, Mr. Reyes and Mr. Olarte document the hours as recorded by the employees themselves. Based on a review of these records, Mr. Frias, Mr. Reyes and Mr. Olarte worked only an average of 34.9, 42.5 and 44.9 hours per week, respectively, during their time at RSI. Therefore, Defendants do not believe there is any merit to Plaintiffs' claims that they worked sixty to sixty-six hours per week during their employment.

Defendants' analysis of the hours worked by Mr. Frias, Mr. Olarte and Mr. Reyes against the pay they received demonstrates that, overall, each was overcompensated (rather than undercompensated) for their services during their employment compared to the amount each would have been paid based strictly under FLSA and NYLL.

RSI employees were not strictly paid on an hourly basis, but rather based on whether they worked a "full day" of 7:00am to 4:30pm (approximately 9 hours); a "half-day" of 7:00am to at the latest 12:00pm (no more than 5 hours); or "overtime" where the workday was extended from 4:30pm to 6:30 but no later than 7:00pm (approximately 2-2.5 hours) – a structure which inured to an employee's benefit because, in many cases, employees completed their work before 4:30pm but were still compensated by RSI for a "full day. With respect to overtime, employees were actually paid two times their base salary for any day that they worked at a job site after regular hours, more than what they would have otherwise received as overtime under FLSA and NYLL. For instance, an employee who worked from 7:00am to 6:30pm on a particular day would mark "1 1/2" on their timesheet and would be paid a "full day" rate as well as an additional "half-day" rate for that day. This resulted in employees frequently receiving pay at double their standard rate for "overtime" even if they did not work more than 40 hours for that given week.

As part of this litigation, Defendants carefully reviewed all payroll records for Plaintiffs and acknowledge for purposes of this settlement that there were a few individual pay periods in which Plaintiffs were not paid the correct overtime rate. That has led Defendants to conclude that they may not be 100% successful establishing all of their defenses. Although Defendants were confident that they could succeed on their defenses at the time of trial, Defendants preferred the certainty of a settlement rather than risk a less favorable outcome at trial, and the settlement amount of $80,000.00 falls within a reasonable range of recovery and accounts for the risks of continued litigation.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $80,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a court-annexed mediation and two Settlement Conferences before the Court. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows each Plaintiff to recover a substantial sum.

### 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

The settlement still enables the parties to avoid the anticipated burdens and expenses of depositions and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least four party depositions and ten non-party depositions. The parties also would have engaged in pre-trial motion practice. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted three or four days.

Each Plaintiff would have been required to take multiple days off from his current job and Plaintiffs would have incurred expenses preparing exhibits and hiring court-licensed translators for trial and conducting the trial. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

### 3. The seriousness of litigation risks faced by the parties:

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiffs could have recovered amounts lower than the Rule 68 Offers of Judgment previously made by

Defendants in this matter and could have been responsible for Defendants' legal fees. The seriousness of this risk favored the settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

## 4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":

The parties engaged in extensive back-and-forth settlement talks for approximately seven months. The parties attended a mediation through the SDNY Mediation Program on November 9, 2020 and appeared for two Settlement Conferences before the Court on June 1, 2021 and June 22, 2021. In total, the parties engaged in numerous phone calls regarding settlement and spent many hours negotiating this settlement during the course of the litigation.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

## 5. The possibility of fraud of collusion:

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### II.     Attorneys' Fees and Distribution to Plaintiffs

Plaintiffs and Defendants agreed to a global settlement of $80,000.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $52,942.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which factor in the alleged length of each Plaintiff's employment, the alleged hours worked by each Plaintiff and the alleged rates of pay received. Each Plaintiff's share of the settlement proceeds also takes into account the records provided by Defendants. Plaintiff Frias will recover $18,000.00, Plaintiff Reyes will recover $11,942.00, and Plaintiff Olarte will recover $23,000.00.

Plaintiffs' counsel respectfully requests $588.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on all Defendants: $188.00

Receipts for the request expenses are attached hereto as **Exhibit 2**.

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($79,412.00), or $26,470.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements

with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $27,058.00.

>**Settlement Amount:** $80,000.00
>**Attorneys' Expenses:** $588.00
>**Settlement less Expenses:** $79,412.00
>**Requested Attorneys' Fees:** $26,470.00 ($79,412.00 / 3)
>**Total payable to Attorneys:** $27,058.00 ($26,470.00 + $588.00)
>**Total payable to Plaintiffs:** $52,942.00 ($80,000.00 - $27,058.00)

Plaintiffs' attorneys and their clients have retainer agreements that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the matter for approximately one year. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

As Your Honor has also requested Plaintiffs' counsel's contemporaneous billing records, please see the time records and attorney qualifications attached hereto as **Exhibit 3**. As explained in greater detail in the attached billing records, Plaintiffs' attorneys' fees as calculated using the lodestar method are **$29,252.50**. Plaintiffs' counsel spent a combined **80.7** attorney hours and **36.9** paralegal hours working on this matter from intake of Plaintiffs through finalizing the Agreement for the Court's review and approval.

### III.   Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of multiple Settlement Conferences before the Court, and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss this action. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.
*Attorneys for Plaintiffs*